**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO: 4:18-CV-00168-JHM**

| | |
|---|---|
| **JACK PAPINEAU and HOLLY PAPINEAU** | **PLAINTIFFS** |
| **V.** | |
| **BRAKE SUPPLY COMPANY, INC., et al.** | **DEFENDANTS** |
| **and** | |
| **BRAKE SUPPLY COMPANY, INC.** | **THIRD-PARTY PLAINTIFF** |
| **V.** | |
| **FRAS-LE S.A., FRAS-LE NORTH AMERICA, et al.** | **THIRD-PARTY DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Third-Party Defendant Fras-le North America's Motion for Summary Judgment [DN 302] and Third-Party Plaintiff Brake Supply's Motion to Hold Fras-le North America's Motion for Summary Judgment in Abeyance [DN 324]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

Plaintiff Jack Papineau alleges that he has malignant mesothelioma from exposure to asbestos-containing friction products, while he was employed with Smith Coal from 1984 to 1992. [DN 1 ¶¶ 12–13]. He sued four defendants including Brake Supply. [DN 1]. Brake Supply is the only remaining defendant. During the relevant time period, Brake Supply allegedly purchased friction products from suppliers and resold the products by either using the products to reline brakes for certain customers or reselling parts to others. [DN 89 ¶ 15].

In its Third-Party Complaint, Brake Supply alleged common law indemnity and apportionment under K.R.S. § 411.182 against Carlisle Industrial Brake and Friction, Inc. and Fras-le North America. [DN 89]. Then, in its Amended Third-Party Complaint, Brake Supply alleged the same claims against Fras-le S.A. and Rudd Equipment Company. [DN 154]. The Court dismissed Rudd Equipment. [DN 259]. Fras-le North America, a domestic corporation, is a subsidiary of Fras-le S.A, a Brazilian corporation. [DN 154 ¶ 6]. The Court permitted Brake Supply to conduct discovery for service of process and personal jurisdiction regarding Fras-le S.A. [DN 282]. Fras-le North America moved for summary judgment against Brake Supply. [DN 302]. In turn, Brake Supply moved to hold Fras-le North America's motion in abeyance. [DN 324].

## II. STANDARD OF REVIEW

Two rules govern the analysis of the motions before the Court: Federal Rule of Civil Procedure 56(a) and 56(d). The Court will first consider Rule 56(d) since it is on that basis that Brake Supply requests to hold Fras-le North America's motion in abeyance. The Court will then consider the summary judgment standard under Rule 56(a).

### A. Federal Rule of Civil Procedure 56(d)

Federal Rule of Civil Procedure 56(d) governs when facts are unavailable to the nonmovant:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

FED. R. CIV. P. 56(d). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *United States v. Kentucky Manor Apartments, Ltd.*, No.

15-CV-00167, 2016 WL 1261157, at *1 (W.D. Ky. Mar. 30, 2016) (citation omitted). "Beyond the procedural requirement of filing an affidavit, Rule 56(d) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Id.* at *2 (cleaned up). "If a Plaintiff's affidavit makes only general and conclusory statements regarding the need for more discovery, then denial of their request for more discovery is proper." *Id.* (cleaned up).

### B. Federal Rule of Civil Procedure 56(a)

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the nonmoving party, the nonmoving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the nonmoving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" FED. R. CIV. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

**A. Brake Supply's Motion to Hold Fras-le North America's Motion for Summary Judgment in Abeyance**

Brake Supply has submitted the affidavit of its counsel, Matthew R. Parsons, in support of its motion. [DN 323-1]. Parsons explains that at the time Fras-le North America moved for summary judgment, Brake Supply was in the process of seeking discovery from Fras-le S.A. per the Court's prior order for discovery on service of process and personal jurisdiction. [DN 323-1 ¶¶ 2–3]. Fras-le S.A. moved for a protective order to preclude Brake Supply from taking discovery on issues focused on any alter-ego status regarding Fras-le S.A. because Fras-le S.A. had withdrawn its objection to service of process. [*Id.* at ¶ 4]. Parsons contends that the alter-ego topics in dispute in the protective order are relevant to its arguments in opposition to Fras-le North America's Motion for Summary Judgment because it may rebut Fras-le North America's argument that it cannot be held liable to Brake Supply for indemnity for liabilities arising before Fras-le North America's existence where Fras-le North America was not incorporated until 1990. [*Id.* at ¶ 6].

> The Court considers several factors when faced with a Rule 56(d) motion:
>
>> (1) when the plaintiffs learned of the issue that is the subject of the desired discovery;
>> (2) whether the desired discovery would change the potential ruling of the District Court;
>> (3) how long the discovery period had lasted prior to the dispositive motion;
>> (4) whether the plaintiffs were dilatory in their discovery efforts; and
>> (5) whether the defendants were sufficiently responsive to discovery requests.

*Brown v. Tax Ease Lien Servicing, LLC*, No. 15-CV-208, 2017 WL 6940734, at *9 (W.D. Ky. May 25, 2017).

*When Brake Supply learned of the issue that is the subject of the desired discovery.* The issue that is the subject of the desired discovery is the alter-ego status between Fras-le S.A. and

4

Fras-le North America for reverse piercing of the corporate veil because Brake Supply (if it is found liable at trial) seeks to hold Fras-le North America responsible for the acts of Fras-le S.A., even though the evidence, as the Court later discusses, shows that Fras-le North America did not exist until after Brake Supply stopped selling asbestos-containing friction products. It is not clear when Brake Supply learned of the need for alter-ego discovery to prove a reverse veil piercing theory for purposes of indemnity liability.

*Whether the desired discovery would change the potential ruling of the Court.* Brake Supply claims that the pending discovery seeking alter ego testimony from Fras-le S.A. is likely to affect Fras-le North America's Motion for Summary Judgment because if Fras-le North America is the alter ego of Fras-le S.A., then Fras-le North America can be held liable to indemnity Brake Supply under a reverse veil piercing theory. [DN 340 at 4]. Brake Supply did not present this piercing of the corporate veil theory in its Third-Party Complaint or Amended Third-Party Complaint. [DN 89, DN 154]. Yet, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint." *Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 847 (W.D. Ky. 2007) (collecting cases). The desired discovery will not change the potential ruling of the Court. This factor weighs against holding the motion for summary judgment in abeyance.

*How long the discovery period lasted before the summary judgment motion.* Brake Supply does not dispute Fras-le North America's assertion that it had approximately ten months to conduct discovery after it brought Fras-le North America into the case. This factor weights against holding the motion for summary judgment in abeyance.

*Whether Brake Supply was dilatory in their discovery efforts.* Fras-le North America argues two points. First, it says, "[e]ven though Brake Supply had ample time to conduct

5

discovery, it simply let the time run out on any discovery efforts beyond taking a Rule 30(b)(6) deposition from [Fras-le North America] on June 12, 2020, just days prior to the extended discovery deadline" [DN 334 at 5]. Also, Fras-le North America argues that the "Court previously denied Brake Supply's request to conduct additional discovery from [Fras-le North America] after expiration of such deadline." [*Id.*]. Considering both arguments, this factor weighs against holding the motion in abeyance.

*Whether Fras-le North America was sufficiently responsive to discovery requests.* Fras-le North America points out that "Brake Supply never asserts in the [r]esponse that [Fras-le North America was unresponsive to discovery prior to the extended discovery deadline." [DN 334 at 5]. This factor weighs against holding the motion for summary judgment in abeyance.

Considering the above factors, Fras-le North America's Motion for Summary Judgment will not be held in abeyance. Therefore, Brake Supply's Motion to Hold Fras-le North America's Motion for Summary Judgment in Abeyance is **denied**.

## B. Fras-le North America's Motion for Summary Judgment

Turning to Fras-le North America's Motion for Summary Judgment, Fras-le North America argues that it is entitled to summary judgment on Brake Supply's indemnity and apportionment claims against it. [DN 302-1 at 2].

### 1. Indemnity

In Kentucky a party may recover under common law indemnity in two classes of cases:

(1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

6

*Adams v. Family Dollar Stores of Ky., LP #11504*, No. 19-CV-167, 2019 WL 6107857, at \*4 (W.D. Ky. Nov. 15, 2019) (quoting *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000)). "In interpreting this standard, the *Degener* court evaluated the cases before it by distinguishing between the active wrongdoers and the parties whose liability was premised solely upon their failure to prevent the torts." *Id.* (cleaned up). "In the cases cited by the *Degener* court, the parties who failed to prevent the harm were entitled to common law indemnity from the parties who actively caused the harm." *Id.* (citations omitted). The second class of cases under common law indemnity is what applies here. There must be enough evidence for a reasonable jury to determine that Fras-le North America was the primary, active tortfeasor and that Brake Supply was the secondary, passive tortfeasor.

The first issue is whether there is a genuine dispute of material fact on whether Fras-le North America was the primary, active tortfeasor. Fras-le North America did not exist until 1990, which is after the time that the evidence shows that Brake Supply stopped selling asbestos-containing friction products. [DN 302-8]. Fras-le S.A. did not acquire Fras-le North America until 1995, which is after the relevant time period of 1984 to 1992. [DN 302-6 ¶¶ 6–11]. In the time before Fras-le North America became a subsidiary of Fras-le S.A., Fras-le S.A. granted Fras-le North America the contractual right to use the "Fras-le" trademark and brand; Fras-le North America "was to act as the sales and marketing entity for [Fras-le S.A.] products, to seek commercial opportunities in the United States." [*Id.* at ¶ 7]. Fras-le North America did not manufacture brake products during the relevant time period. [*Id.* at ¶ 13].

There is former and current Brake Supply employee testimony that supports the lack of evidence connecting Fras-le North America and Smith Coal. Tim Titus, a former Brake Supply employee who was identified as a salesperson who sold products to Smith Coal in the 1990s,

7

testified that to his knowledge he was not delivering and selling "Fras-le" products after 1991. [DN 302-19 Titus Dep. 43:1–5]. Kim Kixmiller, a Brake Supply employee since the mid-1970s, believes that in the 1990s Brake Supply did not purchase from Fras-le. [DN 302-5 Kixmiller Dep. 90:18–25].

Brake Supply has insisted that it stopped selling asbestos-containing friction products in the mid to late 1980s and testimony from Brake Supply current and former employees supports this. Tom Berkley, Executive Vice President and the corporate representative for Brake Supply, testified that it was his understanding that the last time Brake Supply sold asbestos-containing friction products was in the late 1980s around 1988. [DN 302-4, Berkley Dep. 136:21–25]. Ken Botsch, a former Brake Supply employee, testified that by 1986 Brake Supply was not purchasing any asbestos-containing friction materials. [DN 302-18 Botsch Dep. 42:2–44:22, 52:22–53:25, 76:3–77:3]. Tom Ferguson recalled that Brake Supply stopped using asbestos around 1985 or 1986. [DN 302-2 Ferguson Dep. 39:6–12]. Kixmiller, testified that she recalled that Brake Supply stopped using asbestos products around 1985, 1986, or 1987. [DN 302-5 Kixmiller Dep. 83:6–25, 86:14–19]. She even testified that it was safe to say that Brake Supply was not selling asbestos-containing friction products of any kind after January 1, 1990. [DN 302-2 Kixmiller Dep. 86:20–24]. Indeed, Brake Supply acknowledges that "[t]he evidence of record in this case establishes that Brake Supply sold asbestos-containing friction products for the type of equipment Mr. Papineau work[ed] on until about 1986 . . . ." [DN 323 at 2].

If Brake Supply is determined to be liable at trial, there is no evidence on which a reasonable jury could find Fras-le North America directly liable to Brake Supply via indemnity. Simply put, based on the evidence here, Fras-le North America cannot be held responsible for

indemnifying Brake Supply for the Papineaus' alleged injuries that occurred before Fras-le North America existed.

It is interesting that Brake Supply decided to focus its efforts in its briefs on the second issue of whether Fras-le North America can be held responsible for the actions of its parent corporation Fras-le S.A., instead of pointing to any dispute of material fact on whether Fras-le North America can be directly liable to indemnify Brake Supply. Nevertheless, Brake Supply argues that the genuine dispute of material fact lies in whether Fras-le North America can be liable to indemnify Brake Supply for the actions Fras-le North America's parent corporation, Fras-le S.A, under a reverse piercing of the corporate veil theory. [DN 323 at 2, 12].

"A theory of liability that the corporate veil should be pierced must be plead in the complaint." *Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 847 (W.D. Ky. 2007) (collecting cases). This naturally applies to reverse corporate veil piercing. Brake Supply does not dispute that it failed to plead a reverse corporate veil piercing theory in its Amended Third-Party Complaint. The Third-Party Complaint and Amended Third-Party Complaint confirms that Brake Supply did not plead a reverse corporate veil piercing theory. Thus, summary judgment is **granted** on the common law indemnity claim.

### 2. Apportionment

This Court has held that a party who files a third-party complaint "has a right to an apportionment instruction under KRS § 411.182 upon a finding where underlying substantive fault exists, but it does not provide a substantive cause of action itself." *Wilson v. Wal–Mart Stores E., LP*, No. 11-CV-00148, 2013 WL 2607113, at *3 (W.D. Ky. June 11, 2013) (cleaned up).

Brake Supply does not have a cause of action of apportionment against Fras-le North America, but Brake Supply has asserted claims against Fras-le North America sufficient to

9

preserve its right to an apportionment instruction under K.R.S. § 411.182 if the evidence supports the instruction at trial.  *See id.*  Therefore, summary judgment is **granted** on this claim.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Third-Party Defendant Fras-le North America's Motion for Summary Judgment [DN 302] is **GRANTED** and Third-Party Plaintiff Brake Supply's Motion to Hold Fras-le North America's Motion for Summary Judgment in Abeyance [DN 324] is **DENIED**.

*Joseph H. McKinley Jr., Senior Judge*
*United States District Court*

November 12, 2020

cc: counsel of record