**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:18-CV-00168-BJB-HBB**

**JACK PAPINEAU and**
**HOLLY PAPINEAU**                                                          **PLAINTIFFS**

**VS.**

**BRAKE SUPPLY COMPANY, INC. et al.**                         **DEFENDANTS**

**And**

**BRAKE SUPPLY COMPANY, INC.**                    **THIRD-PARTY PLAINTIFF**

**V.**

**FRAS-LE S.A., et al**                                   **THIRD-PARTY DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>
<u>**AND ORDER**</u>

Before the Court is a Motion for Protective Order filed by Third-Party Defendant Fras-le

S.A. (DN 317).  Fras-le S.A. is requesting entry of an Order protecting it from any obligation to

respond to certain Topics identified in the Amended Notice of Defendant and Third-Party Plaintiff

Brake Supply, Inc. to take the Remote Videoconference Deposition of Fras-le S.A. pursuant to

Fed. R. Civ. P. 30(b)(6) (DN 306).  Fully briefed, this matter is ripe for decision.  For the following

reasons, Fras-le S.A.'s Motion for Protective Order is **GRANTED as to all of the Topics in the**

**Amended Notice**.

<u>BACKGROUND</u>

Plaintiff Jack Papineau alleges that he has malignant mesothelioma from exposure to asbestos-containing friction products while he was employed with Smith Coal from 1984 to 1992 (DN 1 ¶¶ 12–13).  Papineau sued four defendants including Brake Supply (DN 1).  Brake Supply is the only remaining defendant.  During the relevant time period, Brake Supply allegedly purchased friction products from suppliers and resold the products by either using the products to reline brakes for certain customers or reselling parts to others (DN 89 ¶ 15).

In its Third-Party Complaint, Brake Supply alleged common law indemnity and apportionment under K.R.S. § 411.182 against Carlisle Industrial Brake and Friction, Inc. and Fras-le North America ("Fras-le N.A.") (DN 89).  In its Amended Third-Party Complaint, Brake Supply alleged the same claims against Fras-le S.A. and Rudd Equipment Company[1] (DN 154).  Fras-le N.A., a domestic corporation, is a subsidiary of Fras-le S.A, a Brazilian corporation (DN 154 ¶ 6).

Fras-le S.A. moved to dismiss the Amended Third-Party Complaint of Brake Supply for insufficient service of process and lack of personal jurisdiction (DN 234).  Brake Supply filed a response (DN 246), and Fras-le S.A. file a reply (DN 269).  In a Memorandum Opinion and Order, the District Judge denied Fras-le S.A.'s motion to dismiss without prejudice (DN 282 PageID # 4637).[2]  The District Judge indicated that Fras-le S.A. may refile its motion after Brake Supply has had an opportunity to conduct limited discovery (Id.).  Further, the District Judge directed "**[n]o later than 120 days from filing of this Memorandum Opinion and Order**, the parties shall

---

[1] The Court subsequently dismissed Rudd Equipment Company (DN 259).

[2] The District Judge noted that Brake Supply was arguing Fras-le S.A. had been sufficiently served process through its alter ego and agent Fras-le N. A. (DN 282 PageID # 4635-36).  The District Judge also acknowledged that Brake Supply's personal jurisdiction argument was, in part, based on the alter-ego argument (Id. PageID # 4636).

complete limited discovery on the issue whether Fras-le North America is the agent and alter ego of Fras-le S.A. and on the issue of personal jurisdiction" (Id. PageID # 4638).

On July 28, 2020, Brake Supply issued a Notice to Take the Remote Videoconference Deposition of Fras-le S.A. pursuant to Fed. R. Civ. P. 30(b)(6) (DN 301). The Notice requests that Fras-le S.A. designate one or more Rule 30(b)(6) witnesses to testify on its behalf regarding 25 Topics (Id.).

On August 7, 2020, Fras-le S.A. filed a Notice indicating it accepted service of the Amended Third-Party Complaint filed by Brake Supply, while still maintaining it is not subject to personal jurisdiction in the Commonwealth of Kentucky (DN 303). Ten days later, Brake Supply issued an Amended Notice to Take the Remote Videoconference Deposition of Fras-le S.A. Pursuant to Fed. R. Civ. P. 30(b)(6) (DN 306). The Amended Notice, which identifies 29 Topics for examination, modified certain Topics and added four new Topics in Paragraphs 19, 20, 21, and 26 (Id.). Counsel for Fras-le S.A. conferred with counsel for Brake Supply regarding the scope of the discovery sought in the Amended Notice (DN 317-8).

Having failed to resolve the parties' disagreement as to the proper scope of discovery, Fras-le S.A. filed the Motion for Protective Order on August 27, 2020, (DN 317). Brake Supply filed its response (DN 321) and, with leave of Court (DN 327, 338), Fras-le S.A. filed a reply (DN 339).

<u>ARGUMENTS OF THE PARTIES</u>

1. Fras-le S.A.'s Motion for Protective Order

Fras-le S.A. seeks a protective order as to certain Topics identified in Brake Supply's Amended Notice (DN 317). Fras-le S.A. points out that various Topics in the amended notice exceed the scope of the May 12, 2020 Memorandum Opinion and Order allowing limited discovery related to its Motion to Dismiss (Id. PageID # 5247). Additionally, certain Topics are irrelevant

or not calculated to lead to the discovery of relevant or admissible evidence and are not proportional to the needs of the case (Id. PageID # 5247-48).  Fras-le S.A. accuses Brake Supply of seeking to conduct discovery about events from the past 30 years to support its novel belief that the Court may retroactively impose general personal jurisdiction over Fras-le S.A. via an alter ego theory founded upon events that occurred years or decades after the events upon which the Plaintiffs' claims and the Third-Party pleadings are based, as opposed to reviewing whether an alter ego relationship existed before or during the relevant period at issue 1984 to 1992 (the "Relevant Period") (DN 317 PageID # 5248).[3]  Because the parent/subsidiary relationship between Fras-le N.A. and Fras-le S.A. began after the Relevant Period, Fras-le S.A. believes that information about this relationship is wholly irrelevant to any jurisdictional inquiry in this case (DN 317 PageID # 5260-68).

As Brake Supply has not asserted general jurisdiction[4] and because the discovery sought has no temporal relevance to specific jurisdiction[5], Fras-le S.A. requests the Court forbid all discovery as to the alter ego matters contained in Topics 5 to 21 and 29 of the Amended Notice except to the extent that Brake Supply wishes to inquire about the relationship of Fras-le N.A. and

---

[3] Fras-le S.A. explains that Brake Supply seeks voluminous information about the relationship between Fras-le N.A. and Fras-le S.A. for almost 30 years after the relevant period at issue, 1984 to 1992 (the "Relevant Period"), in an ostensible effort to prompt the Court to impose personal jurisdiction over Fras-le S.A. for events occurring during the relevant period, via a theory that Fras-le N.A. became Fras-le S.A.'s alter ego at some point between Fras-le N.A.'s 1990 incorporation and/or Fras-le S.A.'s 1995 acquisition of Fras-le N.A. and the present (Id. PageID # 5248).

[4] Fras-le S.A. explains that general jurisdiction "is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to [its] contacts with the state.'"  Bird v. Parsons, 289 F.3d 865, 873 (6th Cir. 2002) (quoting Third Nat'l Bank v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir.1989), cert. denied, 493 U.S. 1058 (1990)). Fras-le S.A. asserts that Brake supply has waived general jurisdiction by failing to plead it in the Amended Third-Party Complaint or argue it in its response to Fras-le S.A.'s motion to dismiss (DN 317 PageID # 5260-68).

[5] Fras-le S.A. explains when a foreign defendant has "purposefully directed" its activities at residents of a forum and litigation results from injuries that arise out of or relate to those activities, a defendant may be subject to specific personal jurisdiction.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 476 (1985) (citation and quotations omitted).

Fras-le S.A., i.e. the lack of a parent/subsidiary relationship, from 1990 until 1995 (DN 317 PageID # 5260-68).   Additionally, Fras-le S.A. asserts that certain Topics, which seek information regarding whether Fras-le N.A. was Fras-le S.A.'s alter ego for service of process in 2019, have been rendered moot as a result of Fras-le S.A.'s recent acceptance of service of process (Id. PageID # 5248).

Fras-le S.A. contends because Brake Supply is asserting specific jurisdiction the scope of the jurisdictional discovery must be limited to Fras-le S.A.'s sales in Kentucky of asbestos-containing friction products for use in mining equipment during the time frame 1984 to 1992 (DN 317 PageID # 5268-69).   Fras-le S.A. asserts that Topics 1-4 and 22-28 in the Amended Rule 30(b)(6) Deposition Notice are overbroad and irrelevant because they seek information relevant to general jurisdiction, Fras-le S.A.'s general sales across the United States from 1984 to 1993 (Id.).

Fras-le S.A. argues the Court should forbid discovery or inquiry into Topics 19-21 and 26 pursuant to Rule 26(c)(1)(A) or (D) because Brake Supply failed to include these topics in the original notice despite knowing that Fras-le S.A. had a connection to Meritor (DN 317 PageID # 5269-70).   Fras-le S.A. suggests that Brake Supply served the Amended Rule 30(b)(6) Deposition Notice, which includes Topics 19-21 and 26, for the purpose of punishing Fras-le S.A. for its perceived "gamesmanship" in accepting service of process (Id.).

2.   Brake Supply's Response

Brake Supply responds by pointing out the Court has ordered Fras-le S.A. to submit to discovery regarding "whether Fras-le North America is the agent and alter ego of Fras-le S.A. and on the issue of personal jurisdiction" (DN 321 PageID # 5336-37, quoting DN 282 PageID # 4638). Brake Supply asserts that Fras-le S.A. cannot establish "good cause" for imposition of a protective order because it's motion improperly attempts to limit discovery of information that is patently

5

relevant to Brake Supply's claim that Fras-le S.A. is subject to the jurisdiction of this Court (Id. PageID # 5337, 5341-55). Brake Supply indicates the Third-Party Complaint and Amended Third-Party Complaint both allege for a portion of the Relevant Period it purchased friction products from Fras-le S.A. and/or its subsidiary Fras-le N.A. (Id. citing DN 89 ¶ 7 and DN 154 ¶ 10). Further, Brake supply points out that in 1986 and 1987, Fras-le S.A. sold products in the United States to Brake Supply using a reseller, Prudential International (Id. PageID # 5337, 5341-55). To the extent Brake Supply supplied friction products to the worksite of the Plaintiff before 1986, which Brake Supply does not concede, some of those products would have been manufactured by Fras-le S.A., purchased from Prudential International, and contained asbestos as a component (Id. PageID # 5338, 5341-55).

Brake Supply asserts that Fras-le S.A.'s acceptance of service of process does nothing to alter the relevancy of the alter ego inquiries with regard to the issue of general personal jurisdiction (Id.).[6] Topics 5-18 address factors relevant to the alter ego and merger theories of personal jurisdictional attribution (Id.). Brake Supply contends that the disputed discovery goes to the question of whether Fras-le N.A., which is subject to general personal jurisdiction of the Court, is merely an extension, an alter ego, or a conduit of Fras-le S.A. thereby making Fras-le S.A. subject to both specific and general personal jurisdiction in this forum for any and all causes of action (Id.).[7] Brake Supply asserts it is entitled to discovery concerning the 40-year alter ego relationship between Fras-le N.A. and Fras-le S.A. as the evidence is sufficient to demonstrate continuous

---

[6] Brake Supply argues there is no requirement that a third-party defendant specifically plead whether its allegations arise under general or specific personal jurisdiction theories (DN 321 PageID # 5346 n. 5). Notwithstanding, Brake Supply asserts that the Amended Third-Party Complaint amply sets forth facts supporting the existence of general jurisdiction (Id.).

[7] Brake Supply alleges that Fras-le S.A. is amenable to suit in Kentucky through specific jurisdiction, because it continuously directed products to the Commonwealth of Kentucky to which the Plaintiff was exposed; and through general jurisdiction because it's alter ego Fras-le N.A. resides in Kentucky and admits it is subject to jurisdiction (Id. PageID # 5351).

contacts between both entities and the Commonwealth of Kentucky (Id.).  Alternatively, Brake Supply argues it is at least entitled to relevant information from the time the cause of action arose (between 1984 and 1993), the time the suit is filed (2018 or 2019), and within a "reasonable period" immediately prior to the filing of the lawsuit (at least between 2011 and 2019) (Id. referring to Topics 5-21 and 29).  Brake Supply contends that Topics 1-4 and 22-28 seek information which is relevant under the stream of commerce theory of personal jurisdiction because the Topics inquire about Fras-le S.A.'s national sales for the purpose of determining the extent to which it intended to sell and/or direct its products into Kentucky or the Illinois-Indiana-Kentucky tri-state area (Id.).

       3.  Fras-le S.A.'s Reply

Fras-le S.A. reiterates its contention that Brake Supply failed to plead or establish general jurisdiction as to Fres-le N.A. and Fras-le S.A. (DN 339 PageID # 5784-86).  Fras-le S.A. argues even if Brake Supply has managed to properly establish general jurisdiction over Fras-le N.A. and that Fras-le S.A. may, therefore, be subject to such jurisdiction via an alter ego theory (despite the glaring temporal discrepancy that exists), Brake Supply should not be allowed to pursue alter ego discovery for the nearly 40-year period (pre-1984 to present) extending from the relevant time frame to the present (DN 339 PageID # 5787-89).  The issue is not whether a parent corporation can be subject to personal jurisdiction via a subsidiary (Id.).  Rather, it is whether an entity that did not exist for the majority of the relevant time frame and that was not Fras-le S.A.'s subsidiary until years after the relevant time frame can, decades later, retroactively serve as an alter ego for the imposition of jurisdiction and whether Brake Supply is entitled to discovery on present day alter ego status (Id.).  The cases cited by Brake Supply do not support its position that alter ego relationship that develops after the relevant time frame can be used to establish personal jurisdiction (Id.).  Fras-le S.A. argues the Court should look to case law from other jurisdictions

for guidance on the temporal/timing analysis in veil piercing/alter ego cases because Kentucky case law has yet to specifically addressing the issue (DN 339 PageID # 5789-91).  Fras-le S.A. argues Brake Supply has waived objection to a protective order as to Topics 19-21 and 26 under Rule 26(c)(1)(A) or (D) because it failed to address Fras-le S.A.'s claim that the amendments were made for a punitive purpose (DN 339 PageID # 5791-92).

## DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure guides the evaluation of any discovery request.  The Rule provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . ."  Fed. R. Civ. P. 26(b)(1).  In assessing whether the discovery is "proportional to the needs of the case," courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.; Advisory Committee Notes 2015 Amendment.  The Rule also directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Id.

Notably, the 2000 amendments to Rule 26(b)(1) replaced prior language defining relevant discovery as that relating to the "subject matter" of the litigation the more restrictive "claim or defense" language.  Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note (2000 Amendment). "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."  Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note (2000 Amendment).  "This limitation ensured that

8

discovery would no longer be used to troll for new claims or causes of action, but that the requested discovery was relevant to the specific claims and defenses before the court." Franklin v. United States, No. 12-1167 KBM/LFG, 2013 WL 11336864, at *2 (D.N.M. Aug. 28, 2013); *see also* Monte H. Greenwalt Revocable Trust v. Brown, No. 2:12-cv-01983 LRH-VCF, 2013 WL 6844760, at *3 (D. Nev. Dec. 19, 2013) ("This prevents litigants from engaging in 'fishing expeditions' that may expose the defendant to claims not previously asserted in the plaintiff's complaint."). As described by another court:

> Rule 26(b)(1) permits a party to obtain discovery that is relevant to "any party's claim or defense." If a complaint states a claim, then a party may engage in liberal discovery and "fish" for evidence to support that claim. . . . However, Rule 26(b)(1) does not authorize what [plaintiff] seeks: to fish for evidence to support new claims that are not contained in the complaint. This would frustrate the fundamental goals of Rule 8 and Rule 26, which exist to provide a defendant with "fair notice" of the claims against it and "avoid surprise at trial."

Haigh v. Constr., Indus. & Laborers Joint Pension Trust for S. Nev., Plan A & Plan B, No. 2:14-cv-1545-JAD-VCF, 2015 WL 1886666, at *6 (D. Nev. April 24, 2017) (citations omitted). Thus, the current version of the Rule and the associated commentary demonstrate that a party is to be held to discovery within the scope of the claims and defenses actually asserted in the pleadings and may not employ discovery as a means of investigating whether additional claims might be available. Samsung Elecs. Am., Inc. v. Chung, No. 3:15-cv-4108-D, 321 F.R.D. 250, 280 (N.D. Tex. June 26, 2017).

In pertinent part Rule 26(c) reads as follows:

> (1) **In General.** A party or any person from whom discovery is sought may move for a ***protective order*** in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . . The court may, for ***good cause***, issue an order to protect a party or person from annoyance, embarrassment,

> oppression, or **undue burden** or expense, including one or more
> of the following:
>
> (A)  forbidding the disclosure or discovery;
>
> . . .
>
> (D) forbidding inquiry into certain matters, or limiting the
> scope of disclosure or discovery to certain matters;

Fed. R. Civ. P. 26(c)(1) (emphasis added).  "Good cause" is established on a showing that disclosure of the information will work a clearly defined and serious injury to the party seeking protection under the rule.  Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984); Avirgan v. Hull, 118 F.R.D. 252, 254 (D. D.C. 1987).  The party seeking protection must show the injury with specificity.  Id.  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" is not sufficient to demonstrate good cause.  Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121 (3d Cir. 1986); Avirgan, 118 F.R.D. at 254.  Courts have wide discretion in weighing any relevant factors and deciding whether to issue a protective order.  Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir. 1994).  Certainly, a protective order under Rule 26(c)(1) may be sought with regard to a deposition notice.  Culver v. Wilson, No. 3:14-CV-660-CRS-CHL, 2015 WL 1737779, at *1-2 (W.D. Ky. Apr. 16, 2015).

As mentioned above, Brake Supply asserts that it is entitled to request information relevant to the question whether the subsidiary corporation Fras-le N.A., which Brake Supply contends is subject to personal jurisdiction of the Court, is merely an extension, an alter ego, or a conduit of the parent corporation Fras-le S.A. thereby making Fras-le S.A. subject to personal jurisdiction of the Court. "The alter-ego theory of personal jurisdiction, in the parent-subsidiary context, provides that 'a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one

and the same for purposes of jurisdiction.'" Pro Tanks Leasing v. Midwest Propane & Refined Fuels, LLC, 988 F. Supp. 2d 772, 781 (W.D. Ky. 2013) (quoting Danton v. Innovative Gaming Corp., 246 F.Supp.2d 64, 72 (D. Me. 2003)). When the unique circumstances for a corporate veil piercing and/or alter ego determination are met and the subsidiary has the requisite minimum contacts with the forum state, courts impute personal jurisdiction from the subsidiary to the parent. Pro Tanks, 988 F. Supp. 2d at 781-82.[8] As Fras-le N.A. does not contest personal jurisdiction (DN 126 ¶ 7, DN 165 ¶ 10), the only issue the Court need address is whether the unique circumstances for a corporate veil piercing and/or alter ego determination are met. If the circumstances do not warrant piercing of the corporate veil, the Court must ascertain whether the parent Fras-le S.A. itself has the minimum contacts with the forum state. Id. (citation omitted).

Before addressing this issue, the undersigned will pause briefly to discuss a recently issued Memorandum Opinion and Order (DN 356) that addressed Fras-le N.A.'s Fed. R. Civ. 56(a) Motion for Summary Judgment (DN 302) and Brake Supply's Rule 56(d) Motion to Hold Fras-le N.A.'s Motion for Summary Judgment in Abeyance pending completion of jurisdictional discovery relating to whether Fras-le N.A. is the alter ego of Fras-le S.A. (DN 324). The Memorandum Opinion and Order warrants mention for two important reasons. First, the District Judge issued it after the parties submitted their memoranda addressing the alter ego issue. Second, the Memorandum Opinion and Order sets forth certain findings of fact and conclusions of law that substantially impact the outcome of the alter ego dispute.

---

[8] Plaintiffs have asserted only state law tort claims in this diversity jurisdiction action brought pursuant to 28 U.S.C. § 1332 (DN 1). Accordingly, the question of substantive law-specifically corporate veil piercing law-is governed by the law of the state in which the Court sits: Kentucky. *See* Pro Tanks Leasing v. Midwest Propane & Refined Fuels, LLC, 988 F. Supp. 2d 772, 782 (W.D. Ky. 2013).

The District Judge denied Brake Supply's Rule 56(d) Motion to Hold Fras-le N.A.'s Motion for Summary Judgment in Abeyance pending completion of jurisdictional discovery relating to whether Fras-le N.A. is the alter ego of Fras-le S.A. (DN 356 PageID # 8084-86). Notably, in concluding the desired discovery would not change the potential ruling of the Court, the District Judge cited Brake Supply's failure to present its piercing of the corporate veil theory in the Third Party Complaint or Amended Complaint despite settled case law indicating it must plead such a theory of liability (DN 356 PageID # 8085, citation omitted).

The District Judge then turned to Fras-le N.A.'s motion for summary judgment on Brake Supply's indemnity and apportionment claims against it (Id. PageID # 8086-90). The District Judge granted Fras-le N.A.'s dispositive motion as to both claims (Id.). Regarding Brake Supply's indemnity claim, the District Judge reached two important conclusions. First, "[i]f Brake Supply is determined to be liable at trial, there is no evidence on which a reasonable jury could find Fras-le North America directly liable to Brake Supply via indemnity. Simply put, based on the evidence here, Fras-le North America cannot be held responsible for indemnifying Brake Supply for the Papineaus' alleged injuries that occurred before Fras-le North America existed" (Id. PageID # 8088-89). This conclusion is the product of several factual findings, some of which are particularly pertinent to the discovery dispute before the Court. Specifically, Brake Supply stopped selling asbestos-containing friction products for the type of equipment Mr. Papineau worked on in the mid-1980s which is several years before Fras-le N.A. began its existence in 1990 (Id. PageID # 8087-88). Fras-le S.A. did not acquire Fras-le N. A. "until 1995, which is after the relevant time period of 1984 to 1992" (Id. PageID # 8087). And, "[i]n the time before Fras-le North America became a subsidiary of Fras-le S.A., Fras-le S.A. granted Fras-le North America the contractual right to use the 'Fras-le' trademark and brand; Fras-le North America 'was to act as the sales and

12

marketing entity for [Fras-le S.A.] products, to seek commercial opportunities in the United States'" (Id. quoting DN 302-6 ¶ 7).

The second conclusion about the indemnity claim concerned Brake Supply's argument that Fras-le N.A. can be held liable to indemnify Brake Supply for the actions of Fras-le N.A.'s parent corporation, Fras-le S.A., under a reverse piercing of the corporate veil theory (Id. PageID # 8089). Essentially, the District Judge concluded Brake Supply is precluded from making the argument because it did not plead this corporate veil piercing theory of liability in the Third-Party Complaint and Amended Third-Party Complaint (Id.).  In reaching this conclusion the District Judge relied on the following settled rule of law, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint."  Sudamax Insutria e Comercio de Digarros, Ltda v. Buttes & Ashes, Inc., 516 F. Supp. 2d 841, 847 (W.D. Ky. 2007) (citations omitted).

Returning to the discovery dispute, the District Judge initially directed "the parties shall complete limited discovery on the issue whether Fras-le North America is the agent and alter ego of Fras-le S.A. and on the issue of personal jurisdiction" (DN 282).  However, the District Judge's subsequent rulings discussed above indicate Brake Supply has no valid basis for pursuing limited discovery on the issue whether Fras-le N.A. is the agent and alter ego of Fras-le S.A. because Brake Supply did not plead this corporate veil piercing theory of liability in the Third-Party Complaint and Amended Third-Party Complaint. *See* Sudamax, 516 F. Supp. 2d at 847 (citations omitted).  To the extent Brake Supply argues it is employing the alter ego argument against Fras-le S.A. for jurisdiction-not liability (DN 321 PageID # 5350), this is a distinction without a difference because Brake Supply did not plead its novel jurisdictional theory in the Third-Party Complaint and Amended Third-Party Complaint either (DN 89, DN 154). *See* Malone v. Windsor Casino Ltd., 14 F. App'x. 634, 636 (6th Cir. 2001) ("It is axiomatic that the basis for 'hailing' a

foreign defendant into court must be clearly articulated when establishing personal jurisdiction.");

Dochnal v. Thomson Reuters Corp., No. 2:18-CV-00044-REEVES/CORKER, 2018 WL 5045205,

at *3 (E.D. Tenn. Oct. 17, 2018) (same).  Moreover, it would be futile for Brake Supply to seek

leave of court to include this novel jurisdictional theory in a Second Amended Third-Party

Complaint considering the District Judge's recent factual findings and Brake Supply's failure to

identify a single case where a court has imputed personal jurisdiction from the subsidiary to the

parent when, as here, the alter ego relationship between the parent and the subsidiary did not exist

during the time frame when the alleged injury occurred.[9]  See Demings v. Nationwide Life Ins.

Co., 593 F.3d 486, 490 (6th Cir. 2010) (leave to amend a pleading may be denied on grounds of

futility if the amended pleading would not withstand a motion to dismiss).

    As mentioned above, under the current version of Rule 26(b)(1) and the associated

commentary a party is to be held to discovery within the scope of the claims and defenses actually

asserted in the pleadings and may not employ discovery as a means of investigating whether

additional claims might be available.  See Chung, 321 F.R.D. at 280.  For these reasons, Brake

Supply may not pursue limited jurisdictional discovery on the issue whether Fras-le N.A. is the

agent and alter ego of Fras-le S.A. for purposes of establishing personal jurisdiction as to Fras-le

---

[9] While Brake Supply has cited cases such as Third Nat'l Bank v. WEDGE Group, Inc., 882 F.2d 1087, 1088-92 (6th Cir. 1989), cert. denied, 493 U.S. 1058 (1990) and United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp.,960 F.2d 1080, 1088-97 (1st Cir 1992), these cases are factually distinguishable because the alter ego relationship between the parent and the subsidiary existed when the events that form the basis of the lawsuit occurred. There is a related reason it would be futile for Brake Supply to seek leave of court to include this novel jurisdictional theory in a Second Amended Third-Party Complaint.  "The corporate veil should not be pierced unless there is (1) 'such a unity of ownership and interest' that the separate personalities of the corporation and its owner cease to exist, and (2) 'the facts are such that an adherence to the normal attributes ... of separate corporate existence would sanction a fraud or promote injustice.'"  Sudamax Insutria e Comercio de Digarros, Ltda v. Buttes & Ashes, Inc., 516 F. Supp. 2d 841, 847 (W.D. Ky. 2007) (quoting White v. Winchester Land Development Corp., 584 S.W.2d 56, 61-62 (Ky. App. 1979)).  While the first requirement focuses on the relationship between the parent and subsidiary, the second element addresses the relationship between the subsidiary and the party asserting the claim.  Id. (citation omitted) (emphasis added).  Here, the second element cannot be satisfied because the District Judge has concluded there is no evidence on which a reasonable jury could find Fras-le N.A. directly liable to Brake Supply via indemnity as the Papineaus' alleged injuries occurred before Fras-le N.A. existed in 1990 (DN 356 PageID # 8088-89).

S.A.  Thus, Topics 1, 5 through 21 and 29 do not seek material that is relevant within the meaning of Rule 26(b)(1) and Fras-le S.A. has demonstrated "good cause" for issuance of a protective order forbidding discovery of that information.

Before ascertaining the scope of discovery exploring whether the Court can exercise personal jurisdiction over Fras-le S.A., the undersigned will pause to discuss the applicable law. The exercise of personal jurisdiction over a nonresident defendant must be consistent with the forum state's long-arm statute and federal due process requirements.  *See* Conn v. Zakharov, 667 F.3d 705, 711 (6th Cir. 2012) (citation omitted).  This means that a district court sitting in diversity may exercise jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so.  Kerry Steel, Inc. v. Paragon Indus., 106 F.3d 147, 148 (6th Cir.1997) (citation omitted).  A *prima facie* case must establish that: "(1) jurisdiction is proper under a long-arm statute or other jurisdictional rule of . . . the forum state; and (2) the Due Process Clause also allows for jurisdiction under the facts of the case."  Conn, 667 F.3d at 711.  A court may not exercise personal jurisdiction over a defendant unless both tests are met. Id. at 711-12.

Notably, Kentucky's longarm statute requires more than a constitutional inquiry because the statute is "narrower in scope than the federal due process clause."  *See* Cox v. Koninklijke Philips, N.V., 647 F. App'x 625, 628 (6th Cir. 2016) (citing Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 55-57 (Ky. 2011).  Thus, a court "first considers Kentucky's long-arm statute to determine whether 'the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories.'"  Carter v. Paschall Truck Lines, Inc., 388 F. Supp. 3d 883, 888 (W.D. Ky. 2019) (quoting Caesars, 336 S.W.3d at 57).  "If the statutory requirements are met, the court must then apply the constitutional due process test 'to determine

if exercising personal jurisdiction over the non-resident defendant offends [its] federal due process rights.'" Carter, 388 F. Supp. 3d at 888 (quoting Caesars, 336 S.W.3d at 57).

The Court's exercise of jurisdiction comports with due process when the defendant has sufficient "minimal contacts such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted).  The frequency of contacts is not determinative; rather, the defendant's conduct must be such that he or she "should reasonably anticipate being hauled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  "The minimum contacts prong is satisfied either through specific or general jurisdiction." Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 214, 218 (6th Cir. 2006).  General jurisdiction over a nonresident defendant requires a showing of "continuous and systematic contacts with the forum state sufficient to justify the state court's exercise of judicial power with respect to any and all claims." Fortis, 450 F.3d at 218; see Bridgeport Music, Inc. Still N the Water Pub., 327 F.3d 472, 477 (6th Cir. 2003); Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd., 138 F.3d 624 (6th Cir. 1998); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n. 8 (1984).  "Specific jurisdiction subjects the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum." Fortis, 450 F.3d at 218 (cleaned up) (citation omitted); see Bridgeport Music, 327 F.3d at 477; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472–73 (1985).  In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." Burger King, 471 U.S. at 474 (quoting Int'l Shoe, 326 U.S. at 316).

The undersigned must now ascertain the scope of discovery exploring whether the Court can exercise personal jurisdiction over Fras-le S.A.  Notably, Fras-le S.A. contends the Amended

Third-Party Complaint only asserts specific jurisdiction.  In response, Brake Supply argues there is no requirement that a third-party defendant specifically plead whether its allegations arise under general or specific personal jurisdiction theories.  Alternatively, Brake Supply asserts that the Amended Third-Party Complaint amply set forth facts supporting the existence of personal jurisdiction pursuant to the sale of "asbestos containing friction *products* into the Commonwealth" (DN 321 PageID # 5346 n. 5, quoting DN 154 ¶ 10).  Brake Supply reasons "[i]t is axiomatic that proof of sales into the forum state on a 'systematic and continuous' [sic] supports the assertion of general jurisdiction over a foreign entity" (Id. PageID # 5346 n. 5, citing Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102,117 (1987) (Brennan, J., concurring in part and concurring in the judgment)).

"It is axiomatic that the basis for 'hailing' a foreign defendant into court must be clearly articulated when establishing personal jurisdiction."  Malone, 14 F. App'x. at 636.  Thus, contrary to Brake Supply's assertion, the Amended Third-Party Complaint must plead the basis for establishing personal jurisdiction over Fras-le S.A.  In pertinent part, the Amended Third-Party Complaint reads:

> 10.  The Court has personal jurisdiction over Fras-Le SA pursuant to KRS 454.210.  Fras-Le SA sold asbestos-containing friction products into the Commonwealth of Kentucky, and Plaintiffs allege that Jack Papineau ("Mr. Papineau") was exposed to such products and that exposure to such products caused the disease which is subject to the Plaintiffs' complaint.  The Court has personal jurisdiction over Rudd Equipment by virtue of its Kentucky citizenship and its doing business in the Commonwealth of Kentucky.

(DN 154 ¶ 10).  The last sentence in the paragraph alleges that the Court has general personal jurisdiction over Rudd Equipment because Kentucky is fairly regarded as its home.  *See* Daimler AG v. Bauman, 571 U.S. 117, 137-38 (2017) (The general jurisdiction inquiry is "whether the

corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum state.") (cleaned up) (citation omitted).  By contrast, the first and second sentences in the paragraph assert the Court has specific personal jurisdiction over Fras-le S.A. because Mr. Papineau's claims arise out of or are related to Fras-le S.A.'s sale of asbestos-containing friction products into the Commonwealth of Kentucky.  *See* Fortis, 450 F.3d at 218 (under specific jurisdiction a defendant is subject to suit in the forum state only on claims that arise out of or relate to the defendant's contacts with that state).  Thus, the undersigned must determine the scope of the limited jurisdictional discovery pertaining to whether the Court has specific personal jurisdiction over Fras-le S.A.

Historically, the following criteria has been employed to determine if specific personal jurisdiction is appropriate:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Tobin v. Astra Pharmaceutical Products, Inc., 993 F.2d 528, 542–43 (6th Cir. 1993) (citation omitted).  "[E]ach criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked."  LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1303 (6th Cir. 1989).  Regarding the first criterion, the Sixth Circuit has adopted Justice O'Connor's "stream of commerce plus" test from Asahi for assessing whether the defendant has purposefully availed himself of the privilege of acting in the forum state or causing consequence in the forum state.  Fortis, 450 F.3d at 218 (citing Asahi, 480 U.S. at 112-13; Bridgeport Music, 327 F.3d at 480).  Factors to be considered in assessing purposeful availment include the defendant's advertising in the forum state, establishing channels for providing regular

18

advice to customers in the forum State, or marketing a product through a distributor who has agreed to serve as the sales agent in the forum State.  Asahi, 480 U.S. at 112.  Additional factors to consider are defendant's direction or control over the flow of the product into the forum; the quantity of the defendant's particular product regularly flowing into the forum; and the distinctive features of the forum that connect it with the product in question.  One Media IP Ltd. v. S.A.A.R. SrL, 122 F.Supp.3d 705, 717 (M.D. Tenn. 2015).

The scope of Topics 22-28 is too broad to be relevant, within the meaning of Rule 26(b)(1), because each Topic fails to specifically limit the request to information pertaining to the sale of Fras-le S.A.'s asbestos-containing friction products.  But contrary to Fras-le S.A.'s assertion, the scope of Topics 22-28 should not be geographically limited to Kentucky.  Information about Fras-le S.A.'s placement of the asbestos-containing friction products into the stream of commerce is relevant as it may bolster an affiliation germane to specific personal jurisdiction.  See Daimler, 571 U.S. at 132.  The Sixth Circuit has indicated information regarding a defendant's sales and other activities throughout the United States may be relevant to the purposeful availment criterion. See Fortis, 450 F.3d at 221-22 (Norwegian companies who rigged their vessels to ship products to the Great Lakes ports, including Toledo, plus frequent calls to these ports, found sufficient to establish purposeful availment of the forum state, Ohio.); Mott v. Schelling & Co., No. 91-1540, 1992 WL 116014, at *4-6 (6th Cir. May 29, 1992) (Austrian based industrial saw manufacturer found to have sufficient contacts with Michigan based on sales to its distributor in Alabama, who sold the saws throughout the United States, and a technician's installation of a saw in Michigan and demonstration of the blade changing technique).  Additionally, the 1982 to 1993 temporal scope in Topics 22-24 and 26-28 is both reasonable and relevant, within the meaning of Rule 26(b)(1).  By contrast, Topic 25 is not reasonable and relevant because it lacks the 1982 to 1993

temporal scope.  In sum, Fras-le S.A. has demonstrated "good cause" for issuance of a protective order as to Topics 22-28.  However, Brake Supply may file a Second Amended Notice with revisions to Topics 22-28 that comport with the above conclusions.

Topics 3 and 4 are not reasonable and relevant, within the meaning of Rule 26(b)(1), because they lack the 1982 to 1993 temporal scope.  Topic 2 is overly broad and confusing because it makes a general request for "[t]he contents of all documents and declarations submitted by or on behalf of Fras-le SA in connection with this matter" (DN 306 PageID # 5219).  As a result, Fras-le S.A. has demonstrated "good cause" for issuance of a protective order as to Topics 2, 3, and 4. However, Brake Supply may file a Second Amended Notice with revisions to Topics 2, 3, and 4 that comport with the above conclusions.

Finally, Fras-le S.A. argues the Court should issue a protective order as to Topics 19-21 and 26 because they are motivated by a punitive purpose (DN 317 PageID # 5269-70).  The record does not substantiate Fras-le S.A.'s claim.  More importantly, the undersigned has already indicated a sound reason for issuing a protective order as to those Topics.  Therefore, Fras-le S.A.'s request for a protective order on this basis is moot.

## CONCLUSION

For the reasons set forth above, the Court finds "good cause" exists to support Fras-le S.A.'s Motion for Protective Order (DN 317) as to Brake Supply's Amended Rule 30(b)(6) Notice of Deposition (DN 306).  However, Brake Supply may file a Second Amended Notice with revisions to Topics 2, 3, 4, and 22-28 that comport with the above conclusions.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that Fras-le S.A.'s Motion for Protective Order (DN 317) is **GRANTED as to all of the Topics** in Brake Supply's Amended Rule 30(b)(6) Notice of Deposition (DN 306).

December 9, 2020

H. Brent Brennenstuhl
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel