UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:18-CV-00168-JHM

| | |
|---|---|
| JACK PAPINEAU and HOLLY PAPINEAU | PLAINTIFFS |
| v. | |
| BRAKE SUPPLY COMPANY, INC., et al. | DEFENDANTS |
| and | |
| BRAKE SUPPLY COMPANY, INC. | THIRD-PARTY PLAINTIFF |
| v. | |
| FRAS-LE S.A., FRAS-LE NORTH AMERICA, et al. | THIRD-PARTY DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

After doctors diagnosed Jack Papineau with mesothelioma, he and his wife sued Brake Supply and several manufacturers of products that allegedly contained asbestos. All the original defendants besides Brake Supply have resolved the Papineaus' claims and are no longer parties to this suit. Brake Supply, however, has not settled. It sued three other manufacturers of asbestos-containing products—Fras-le North America, Fras-le South America, and Carlisle Industrial—which Brake Supply maintains are liable for some or all of any damages the Court may award the Papineaus. These third-party claims are contingent on a determination that Brake Supply is liable for the Papineaus' injury.

But the Papineaus do not want the manufacturers complicating and slowing their case against Brake Supply. So they have asked the Court to sever or bifurcate Brake Supply's third-party claims. The Papineaus contend that the two-sided dispute they originally initiated with Brake Supply would proceed more quickly and efficiently than the current lineup: a three-sided dispute in which Brake Supply both defends its own actions and blames third-party manufacturers for causing any harm.

In situations like these, Rules 14, 21, and 42(b) of the Federal Rules of Civil Procedure authorize trial judges to consider whether two separate lawsuits (severance) or a single trial held in two distinct stages (bifurcation) would be more efficient than a single proceeding and trial. And courts typically examine efficiency in a pragmatic manner that emphasizes whether "common questions" would pervade separate proceedings. Here they would: the same questions of who and what caused Mr. Papineau's injuries pervade all the claims and defenses at issue. Therefore, the Court concludes that bifurcation or severance would hinder, rather than help, overall judicial economy and **DENIES** the Papineaus' motion.

**A. The Papineaus blame Brake Supply for Mr. Papineau's mesothelioma, while Brake Supply blames other asbestos manufacturers.** Jack Papineau worked as a mechanic, truck driver, and heavy equipment operator at a coal mining company (Smith Coal) from roughly 1984 until 1992. Twenty-six years later, in August 2018, doctors diagnosed him with mesothelioma. That October, Jack and his wife Holly sued several alleged manufacturers and distributors of industrial brake products that contained asbestos. They alleged that Mr. Papineau contracted mesothelioma from asbestos exposure during his employment with Smith Coal. All but one of the original defendants settled with the Papineaus. *See* DNs 138, 139, and 231.[1]

Brake Supply, a distributor of industrial brake components used in mining operations, is the only original defendant that did not resolve the Papineaus' claims. Instead, it filed its own claims against other manufacturers, under Federal Rules of Civil Procedure 14 and 21, on the ground that these third parties bore responsibility for any occupational-asbestos exposure and injuries Mr. Papineau suffered. The amended third-party complaint seeks common-law indemnification and statutory apportionment from these manufacturers. *See* DN 154 (citing K.R.S. § 411.182).

**B. The Papineaus' request for severance or bifurcation.** More than two years after this litigation began, eight months after Brake Supply filed its own complaint, and five months after Brake Supply amended its complaint, the Papineaus moved to sever or bifurcate Brake Supply's third-party claims. *See* DN 262. Severance or bifurcation is the exception, not the norm. *See* 9A Wright & Miller, *Fed. Prac. and Proc. Civ.* § 2388 (3d ed. 2008) ("The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course."); *Gen. Elec. Credit Union v. Nat'l Fire Ins. of Hartford*, No. 1:09-cv-143, 2009 WL 3210348, at *2 (S.D. Ohio Sept. 30, 2009) ("Although not routine, a bifurcation of claims is permissible if it serves judicial economy and does not unfairly prejudice any party.") (citing *Hines v. Joy Mfg. Co.,* 850 F.2d 1146, 1152 (6th Cir.1988)). Yet the Papineaus assert that the length of discovery, risk of jury confusion, and cost of litigation will cause prejudice if the third-party manufacturers remain in this case alongside Brake Supply. *See* DN 262 at 6–11. The motion asks the Court to simplify the proceedings by severing or bifurcating the dispute between Brake Supply and the manufacturers from the Papineaus' claim against Brake Supply.

Under the Papineaus' preferred route, discovery, dispositive motions, and trial would proceed first against Brake Supply alone. Then, if a judge or jury held Brake Supply liable for Mr.

---

[1] Between the commencement of this lawsuit in October 2018 and the filing of this motion in April 2020, a great deal happened in this litigation. Nine months after the Papineaus filed the Complaint, Brake Supply sought leave to file a Third-Party Complaint (DN 74) and served three third-party defendants (DN 89). Three months later, Brake Supply amended its Third-Party Complaint to include a fourth defendant, Rudd Equipment Company, Inc. (DN 153). Two of the original defendants settled with the Papineaus roughly one year after the suit's initiation (DNs 138 and 139); three months later, the third original defendant settled (DN 231). Two third-party defendants, Carlisle Industrial and Fras-Le North America, answered Brake Supply's Third-Party Complaint (DNs 165 and 169) three months after Brake Supply filed it. Meanwhile Rudd filed a motion to dismiss (DN 189), which the Court granted in March 2020 (DN 259). And the final third-party defendant, Fras-Le S.A., filed its own motion to dismiss (DN 234), which the Court denied (DN 282). All this while the parties maintained a robust discovery schedule and motion practice, and all without any apparent indication that the third-party claims and parties would split from the original dispute.

Papineau's injuries, Brake Supply would have occasion to pursue its contingent claims against the manufacturers. This path, the Papineaus contend, would better serve the interests of efficiency and justice by resolving their claims in a proceeding that would move faster and more simply than a proceeding that involved additional parties and claims.

### C. The Federal Rules of Civil Procedure grant trial courts wide discretion regarding whether to bifurcate or sever proceedings.

**Rules 14 and 21** govern severance of third-party claims.[2] Under Rule 14(a)(4), any party may move to "sever" a third-party claim from the rest of the lawsuit, thereby creating two independent cases out of one. Similarly, Rule 21, which covers misjoinder and nonjoinder of parties, gives trial courts authority "to sever any claim against a party."

District courts have "broad discretion" in deciding whether to sever claims. *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018) (citation omitted). In exercising that discretion, courts often consider this non-exhaustive list of factors:

> (1) whether the claims arise out of the same transaction or occurrence;
> (2) whether the claims present some common questions of law or fact;
> (3) whether settlement of the claims or judicial economy would be facilitated;
> (4) whether prejudice would be avoided if severance were granted; and
> (5) whether different witnesses and documentary proof are required for separate claims.

*Id.* The moving party bears the burden of demonstrating that "severance is required to avoid prejudice or confusion and to promote the ends of justice." *Arnold v. Heyns*, No. 13-cv-14137, 2014 WL 7184546, at *4 (E.D. Mich. Dec. 16, 2014) (quoting *Bey v. City of N.Y.,* No. 99 Civ. 3873, 2009 WL 1911742, at *1 (S.D.N.Y. June 30, 2009)).

**Rule 42(b)**, meanwhile, authorizes courts to *bifurcate* third-party claims—that is, split a single action into multiple phases—for "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). As with severance, trial courts have "broad discretion" to decide whether and when to bifurcate. *In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir. 1988). They consider "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (citation omitted). "Courts should look to case-specific facts to determine whether bifurcation is proper, placing the burden on the party seeking bifurcation to show separation of issues is the most appropriate course." *Nationwide Mut. Fire Ins. Co. v. Jahic*, No. 3:11-cv-155, 2013 WL 98059, at *2 (W.D. Ky. Jan. 7, 2013) (collecting cases); *see also* Wright & Miller § 2388 ("The party seeking separate trials, however, has the burden of proving that separation of the cases is necessary.") (collecting cases).

### D. The Papineaus have not shown that bifurcation or severance would meaningfully accelerate and simplify this case.
Brake Supply represents that it will defend against the

---

[2] Rule 19 also provides rules for the joinder of third parties, but the Papineaus do not argue that Brake Supply failed to comply with Rule 19 when it added the third-party defendants to this lawsuit.

Papineaus' claims by proving that the third-party defendants manufactured and sold the asbestos-containing products that Mr. Papineau allegedly encountered. *See* DN 276 at 8. This defense would involve testimony and documents about the products that Brake Supply sold, the third parties manufactured, and Mr. Papineau used. So would Brake Supply's prosecution of its third-party claims; those (according to Brake Supply) involve evidence that the third-party manufacturers are responsible for the blameworthy asbestos-containing products, regardless of whether Brake Supply distributed them. *Id.* In light of the above factors guiding the Court's exercise of its discretion to efficiently manage this case and its overall docket, a single proceeding and trial on all claims would likely prove more efficient than separate proceedings featuring overlapping testimony and a risk of inconsistent verdicts.

1. **Severance**

The factors set forth in the precedents discussed above, like the case-specific considerations set forth below, overlap considerably. In the main, their application here consistently militates against separate trials of these common issues.

**Whether the claims arise out of the same transaction or occurrence**. The Papineaus' claims against Brake Supply center on their allegation that Brake Supply sold asbestos-containing products that caused Mr. Papineau's mesothelioma. Brake Supply contends that its third-party claims are intertwined with any such transaction: the third-party defendants manufactured the brake components sold to Mr. Papineau's employer that may have contained asbestos. DN 276 at 8. So, if products made by others and sold by Brake Supply caused Mr. Papineau's illness, Brake Supply maintains that the manufacturers are directly responsible to the Papineaus—or should share in at least a portion of the fault. *Id.* at 8.

The source of Mr. Papineau's alleged occupational exposure serves as the crux of both classes of claims, which rest on the movement of asbestos-containing products through the stream of commerce to Brake Supply, to his employer, and ultimately to Mr. Papineau. These claims about the same transactions are ones that the law favors resolving in a single action. *See Grover v. BMW of N. Am.*, 434 F. Supp. 3d 617, 623 (N.D. Ohio 2020) ("The phrase 'transaction or occurrence' is 'given a broad and liberal interpretation in order to avoid a multiplicity of suits.'") (quoting *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969)).

**Whether the claims present common questions of law or fact**. The Papineaus concede that both classes of claims "may share some common facts." DN 262 at 5. They will put forth evidence about which asbestos-containing products Brake Supply sold, while Brake Supply will put forth evidence regarding who manufactured and sold the products that may have caused Mr. Papineau's illness. Fras-le and Carlisle Industrial, for example, rely on the same expert witnesses as Brake Supply. DN 281 at 6; *see also* DNs 271 and 273 (third-party defendants adopting Brake Supply's expert witnesses on exposure and causation).

Deposing and examining those witnesses twice, in separate actions, would require costly and time-consuming duplication of efforts. And "[w]hen separate trials would involve overlapping evidence, courts frequently deny motions to bifurcate," which would "serve to increase the burdens

on the litigants, the Court, and the witnesses." *Procter & Gamble v. CAO Grp.*, No. 1:13-cv-337, 2013 WL 6061103, at *2 (S.D. Ohio Nov. 18, 2013) (citations omitted).

**Whether severance would facilitate settlement of the claims or judicial economy**. The Papineaus argue that Brake Supply and the third-party defendants would insert new issues into the trial by "battl[ing] over complicated concepts such as primary and secondary liability." DN 262 at 5. Severance, on the other hand, could theoretically advance the efficient resolution of the third-party claims: a verdict for Brake Supply on the Papineaus' primary claims would eliminate any need for Brake Supply to pursue indemnification or apportionment of liability that does not exist. The Papineaus also speculate that severance could facilitate the settlement of the third-party claims if all stakeholders know *someone* is liable to the Papineaus, leaving only the question of who foots the bill. Although Fras-Le's response indicated meaningful settlement assessment couldn't occur until all parties completed discovery, including on the third-party claims. The settlement probabilities in a case with this many variables are hard to calculate ex ante.

The Court therefore lacks any basis for inferring which set of circumstances would produce a higher likelihood of settlement. Perhaps a bilateral resolution would aid the settlement of downstream claims. But then again perhaps the third-party manufacturers emerge with the greatest incentive to resolve the dispute. No information before the Court allows for a reasoned decision one way or the other.

What about "judicial economy" more generally? *See Parchman*, 896 F.3d at 733 (citation omitted); *Williams v. Ameris Bank*, No. 3:20-cv-92, 2020 WL 3066621, at *1 (W.D. Ky. June 9, 2020). The Papineaus contend the inclusion of the third-party defendants at trial will complicate and prolong the proceedings. Yet the benefits of streamlining a first trial after severance must be weighed against the costs of holding two trials. Because the Papineaus' claims are so interrelated with Brake Supply's third-party claims, due to the common questions on causation and fault discussed above, the inefficiencies of rehashing those issues in a second trial would likely outweigh any efficiency gains captured by determining Brake Supply's liability first.

As the Sixth Circuit and *Wright & Miller* have explained, "[u]nderlying Rule 14 is a desire 'to promote economy by avoiding the situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party who may be liable to him for all or part of the original plaintiff's claim against him.'" *Id.* (quoting 6 Wright, Miller, Kane, *Fed. Prac. & Proc. Civ.* § 1441 at 289–90 (2d ed. 1990)). The potential cost of a lengthy second trial on repetitive issues with repetitive witnesses hinders judicial economy and weighs against severance.

**Whether severance would avoid prejudice**. The Papineaus claim that they will suffer two forms of prejudice if required to try their claims alongside Brake Supply's: the trial would start later, and last longer, than in a severed case. This delay is particularly significant, they contend, because the longer the case lasts, the less likely Mr. Papineau will be able to participate, given his medical prognosis. DN 262 at 5. The Court understands and appreciates the Papineaus' desire to expeditiously pursue their claims.

The Papineaus' discussion of the current record and future proceedings, however, does not indicate that adjudicating all claims together will cause significant delays. The motion and reply speculate about the potential of future discovery extensions, but do not identify any concrete need

for extensions due to the third-party claims. *See* DN 281 at 5–6. Indeed, Brake Supply filed its amended third-party complaint about one year after the Papineaus first sued—within the Scheduling Order's period for joining parties or amending pleadings, DN 31, and long before the close of discovery or the setting of a trial date. *Cf. U.S. Ethernet Innovations v. Acer*, No. C 10-3724, 2013 WL 6671774, at *3 (N.D. Cal. Dec. 18, 2013) (severing a multi-defendant third-party claim filed four years after the initial lawsuit).

To date, the parties obtained one 120-day extension of scheduling deadlines due to the participation of third-party defendants. DN 275 at 3. A past extension does not impose future prejudice on the Papineaus. In any event, Fras-le North America has represented that it does not expect to "require additional time for discovery or satisfaction of the amended deadlines," *id.* at 3 n.1, and has already filed its motion for summary judgment, DN 302, which the Court already resolved, DN 356. Given the normal pace of litigation, the progress all parties have made in discovery, and the reality that all anticipated jury trials have faced delays due to the global coronavirus pandemic, *see* General Order 21-08 (continuing all jury trials through April 30, 2021), the Court does not anticipate the inclusion of third-party defendants to be the source of significant additional or prejudicial delay. To the extent delay is a concern, other mechanisms are available to the Court and the parties to speed the case along.

The Papineaus also argue that they will suffer prejudice once the case reaches trial because multiple parties "trying to disprove their claims against Brake Supply" will elongate proceedings. DN 281 at 6–7. This is unlikely, or at least speculative. Even in the severed or bifurcated proceeding the Papineaus envision, Brake Supply would likely rely on the actions of the third-party defendants in their defense against the Papineaus' claims. *See* DN 276 ("Brake Supply intends to put forth evidence that the third-party defendants sold asbestos-containing products to Brake Supply for the equipment Mr. Papineau alleges he used."). The efficiency benefits of separate trials diminish greatly if "the preliminary and separate trial of an issue will involve extensive proof and substantially the same facts or witnesses as the other issues in the cases, or if any saving in time and expense is wholly speculative[.]" 9A Wright & Miller, *Fed. Prac. and Proc. Civ.* § 2388 (3d ed. 2008) (collecting cases).

**Whether separate claims require different witnesses and documentary proof**. The Papineaus concede that "some overlapping evidence may exist in proving [their] claims and Brake Supply's third-party claims." DN 281 at 7. But the Papineaus argue that Brake Supply, in order to prove an indemnity claim, must introduce additional evidence about who supplied products to Brake Supply—evidence the Papineaus "do not need to introduce to succeed on their claims." *Id.* Brake Supply would introduce that evidence as part of its defense regardless. DN 276 at 8; DN 275 at 5. Given the latitude the defendants will enjoy in calling witnesses and defending claims at trial, the record presented by the parties at this stage indicates a significant likelihood of overlap in the evidence that would be presented during each of the contemplated proceedings.

\* \* \*

Considering each of these factors, the Court concludes that the Papineaus have failed to carry their burden of demonstrating that severance is appropriate. The need to address common issues concerning the source of Mr. Papineau's occupational exposure, the product-distribution

chain, and expert testimony indicate that judicial economy is best served if this case moves forward as a single action.

### 2. **<u>Bifurcation</u>**

The Court's bifurcation analysis addresses considerations very similar to those addressed regarding severance. Indeed, courts sometimes use the terms interchangeably. *See* Wright & Miller § 2387 n.3. Technically, "'bifurcation' is *not* the same as 'severance.'" *Brown v. Tax Ease Lien Investments, LLC*, 77 F. Supp. 3d 598, 604 (W.D. Ky. 2015) (emphasis in original). Bifurcation "implies a single action or case that is handled in multiple phases, usually for efficiency or fairness' sake." *Id.* For example, a single case may be "bifurcated into a trial on liability and a trial on damages," such that "the damages phase becomes moot if the first phase concludes there was no liability." *Id.* So a bifurcated case involves separate phases that result in a single judgment, while severance creates "entirely independent actions to be tried, and judgment entered thereon, independently." *Id.* (quoting *Phillips v. Unijax, Inc.,* 625 F.2d 54, 56 (5th Cir. 1980)). Rule 42(b) bifurcation applies "when the claims are interlinked factually such that separate trial may be appropriate, but final resolution of one claim affects the resolution of the other." *Id*.

The Sixth Circuit, as noted above, has made clear that the decision whether to bifurcate depends on the trial court's assessment of "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson*, 477 F.3d at 339 (citation omitted). Having already addressed potential prejudice and judicial economy in the context of severance, the Court further concludes that any potential jury confusion likewise does not require bifurcation.

Courts regularly call upon juries "to confront alternative arguments by defendants arguing for complete absolution from liability on the one hand, and for imposition of some lesser degree of liability on the other." *Rothstein v. Steinberg*, No. 5:08-cv-673, 2008 WL 5716138, at *2 (N.D. Ohio June 9, 2008). The Court has tools available to mitigate jury confusion on complicated issues—including those raised in the Papineaus' claims against Brake Supply. These include the "use of cautionary warnings, limiting instructions, special verdict forms, and other instructions to the jury." *Id.* (collecting cases).

The risk of inconsistent verdicts also informs the determination whether to bifurcate. *See Kosters v. Seven-Up Co.*, 595 F.2d 347, 356 (6th Cir. 1979); Wright & Miller § 2388. As with severance, courts "take a dim view" of bifurcation "where a risk of inconsistent verdicts is present," because, for example, "one fact-finder might conclude that [one party] bears full responsibility, while the other determines that [another] is the sole liable entity." *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 126 (S.D.N.Y. 2000) (collecting cases under Rule 42(b)). That risk is non-trivial here: a first jury could hold Brake Supply fully or partially liable to the Papineaus, while a second jury, confronting overlapping parties and different arguments, might reach a different conclusion with respect to Brake Supply's relative responsibility. *Cf. Olden v. LaFarge Corp*, 383 F.3d 495 n.6, 509 (6th Cir. 2004) (a court should not bifurcate a case "in such

a way that the same issue is … reexamined by different juries" (quoting *In re Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1303 (7th Cir. 1995))).[3]

\* \* \*

Because the Papineaus have not carried their burden of demonstrating that potential economy, convenience, and confusion warrant separate phases for this proceeding, the Court declines to bifurcate this suit. *See Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996) ("The language of Rule 42(b) places the decision to bifurcate within the discretion of the district court.").[4]

## ORDER

To facilitate judicial economy and avoid multiplying proceedings on common fact questions arising out of the same occurrences, the Court **DENIES** the Papineaus' motion to sever or bifurcate Brake Supply's third-party claims.

Benjamin Beaton, District Judge
United States District Court

cc: counsel of record

April 2, 2021

---

[3] The Papineaus also raised a concern about Brake Supply pursuing both apportionment and indemnity against the third-party defendants. DN 262 at 4–5. As the Court previously stated, apportionment is not an independent cause of action. DN 259. Federal and state courts have recognized that a party who files a third-party complaint "has a right to an apportionment instruction under K.R.S. § 411.182 upon a finding 'where underlying substantive fault exists, but [apportionment] does not provide a substantive cause of action itself.'" *Wilson v. Wal–Mart Stores E., LP*, No. 4:11-cv-148, 2013 WL 2607113, at \*3 (W.D. Ky. June 11, 2013) (citation omitted); *see also Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000) (K.R.S. § 411.182 codified the "procedure for determining the respective liabilities of joint tortfeasors" and eliminates the need for a separate apportionment cause of action). To the extent Brake Supply seeks an apportionment instruction against the third-party defendants, that would not amount to a separate cause of action relevant to the Court's severance or bifurcation analysis.

[4] The Court is nevertheless well aware of the need for efficiency in this dispute, and would like the parties to file a joint status report by April 16, 2021 and propose mutually agreeable times when the Court may hold a telephonic status conference before April 30, 2021.